UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:21-cv-333-MOC-WCM

| | |
|---|---|
| JOHN D. BABB, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| WADE HAMPTON GOLF CLUB, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on cross motions for summary judgment. Plaintiffs move for partial summary judgment as to liability only. (Doc. No. 47). Defendant moves for summary judgment against all of Plaintiffs' claims. (Doc. No. 48). For the following reasons, Plaintiffs' partial summary judgment motion will be **GRANTED** whereas Defendant's motion will be **DENIED**.

I. Factual Background

The eleven Plaintiffs in this contract action are resigned members of Defendant Wade Hampton Golf Club, Inc. ("Club"). The Club was founded in 1987 and published its first set of bylaws that same year. (Doc. No. 49). Each Plaintiff contributed equity to the Club upon joining as a full member. (Doc. No. 47). According to the Club's bylaws, full members are entitled to the refund of their equity contribution upon resignation. (Id.). This refund is known as an "equity redemption." (Id.). Redemption is not due the former member at the time of resignation, but instead "at such time as the CLUB admits a new Full Regular Member or Provisional Regular Member in accordance with these Bylaws." (Id.). The Club maintains a "Priority List" in order of former members' resignation: for each new Full or Provisional Regular Member the Club admits,

1

the Club must redeem the equity of the next resigned member on the Priority List. (Id.).

There are four types of Club membership relevant to this case: Full Regular, Provisional Regular, Non-Resident, and Double Eagle. A Full Regular Member is a Club member with full golfing privileges who owns real property at the Club. (Doc. No. 47). A Provisional Regular Member is a Club member with full golfing privileges who commits to own real property at the Club within two years. (Id.). A Non-Resident Member cannot own real property near the club. In 2007, the Club created another membership classification: the "Double Eagle." (Doc. No. 55). The Double Eagle Membership is limited to persons under 52 years old who commit to own real property at the club by the time they reach that age, at which time they become a Full Regular Member upon payment of additional initiation fees and higher annual dues. (Doc. No. 47).

When the Club admits a new Full or Provisional Regular Member, the bylaws require it to pay an equity redemption to the next member on the Priority List. When the Club admits a new Non-Resident or Double-Eagle Member, the bylaws do not require the Club to pay an equity redemption. (Id.). Both Non-Resident and Double Eagle Members have the option to become Full Regular Members. When the Club "converts" Non-Resident or Double Eagle Members into Regular Members, it has not historically paid an equity redemption. (Id.); (Doc. No. 49 ¶ 5). Plaintiffs—all resigned members on the Priority List owed equity redemptions by the Club— argue that the bylaws require the Club to pay equity redemptions upon conversion of Non-Resident or Double Eagle Members into Regular Members. The Club disagrees, arguing that the Club's "conversion" of an existing member is distinct from its "admission" of a new one.

## II. Procedural Background

Plaintiffs brought this suit in November 2021, following the Club's suspension of all equity redemption payments. (Doc. No. 47). Plaintiffs subsequently discovered that the Club had

2

not been paying equity redemptions upon the conversion of Non-Resident or Double Eagle Members into Full Regular Members. (Id.). On July 5, 2023, Plaintiffs moved for partial summary judgment on the question of liability. (Id.). Defendant responded in opposition (Doc. No. 52) and Plaintiffs submitted a reply. (Doc. No. 55). Also on July 5, 2023, Defendant moved for summary judgment. (Doc. No. 48). Plaintiffs responded in opposition (Doc. No. 53) and Defendant replied. (Doc. No. 56). This Court heard argument on the parties' cross motions for summary judgment on October 17, 2023. Defendant filed supplemental briefing three days later. (Doc. No. 65). This matter is now ripe for disposition.

### III. Standard of Review

Summary judgment is granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On summary judgment, the court must construe all facts and inferences in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The movant for summary judgment bears the burden of persuasion—that is, the burden to show that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes this threshold showing, then the burden shifts to the nonmovant to show that specific, material facts exist giving rise to a genuine dispute. Id. at 324. The nonmovant cannot simply rely on the allegations in his pleadings to meet this burden. Id. Likewise, conclusory allegations or denials are alone insufficient to for a nonmovant to survive summary judgment. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmovant must adduce more than a scintilla of evidence establishing a genuine issue of

material fact. Anderson, 477 U.S. at 252. Evidence regarding "[f]actual disputes that are irrelevant or unnecessary"—that is, immaterial—is not enough. Anderson, 477 U.S. at 248. Once the burden has shifted, FED. R. CIV. P. 56(c) demands that the nonmovant show the existence of a genuine factual dispute with respect to every essential element of his claim.

Where a dispute turns on contract interpretation, North Carolina courts apply a more specialized summary judgment standard. Because this Court is sitting in diversity (Doc. No. 1 at 5), and because the substantive North Carolina summary judgment standard for contract interpretation does not implicate "forum-shopping" or "inequitable administration of the laws," the North Carolina standard applies to this case. Hanna v. Plumer, 380 U.S. 460, 468 (1965); see, (Doc. No. 1 at 5); (Doc. No. 49 at 8); Rous v. City of Asheville, 625 F. Supp. 3d 472, 479 (W.D.N.C. 2022). Under the North Carolina standard, the meaning of an unambiguous term in a written contract is a question of law for the court. Lane v. Scarborough, 200 S.E.2d 622, 624 (N.C. 1973); Mountain Fed. Land Bank v. First Union Nat'l Bank, 390 S.E.2d 679 (N.C. Ct. App. 1990) ("[W]hen the language of a contract is plain and unambiguous, construction of the language is a matter of law for the court.").

Reframed in the context of the federal summary judgment inquiry, the North Carolina pleading standard dictates that no genuine dispute of material fact arises with respect to contract interpretation unless the language is so ambiguous that extrinsic evidence is necessary to decipher it. Clear Fir Sales Co. v. Carolina Plywood Distribs., Inc., 185 S.E.2d 737, 737 (N.C. Ct. App. 1972). In determining whether a contract is ambiguous, the court is limited by the four corners of the document. See Woods v. Nationwide Mut. Ins. Co., 246 S.E.2d 773, 777 (N.C. 1978); Fairview Developers, Inc. v. Miller, 652 S.E.2d 365, 367 (N.C. Ct. App. 2007); Piedmont Bank & Trust Co. v. Stevenson, 339 S.E.2d 49, 52 (N.C. App. 1986). That the parties propose

4

competing interpretations of the same contract language does not itself establish ambiguity. Walton v. City of Raleigh, 467 S.E.2d 410, 412 (N.C. 1996).

**IV. Discussion**

This case is about contract interpretation under North Carolina law. Defendant Club is a non-profit corporation. (Doc. No. 1 ¶ 15). The parties dispute the meaning of language contained in the non-profit corporation's bylaws. (Doc. No. 47). A non-profit corporation's bylaws constitute a contract between the corporation and its members: here, between Plaintiffs and Defendant. Roberts v. Madison Cnty. Realtors Ass'n, 465 S.E.2d 328, 331 (N.C. Ct. App. 1996), rev'd on other grounds, 474 S.E.2d 783 (N.C. 1996); Virmani v. Presbyterian Health Servs. Corp., 488 S.E.2d 284, 287–88 (1997).

When Plaintiffs resigned, the 2015 Bylaws governed the relationship between the Club and its members. (Doc. No. 47 at 6). The relevant provision from the 2015 Bylaws stipulates:

> Upon the resignation, death or expulsion of a Member, the Redemption Amount for such former Member's Membership shall be paid to the former Member or his or her estate by the CLUB in the priority set forth in Section 3 of this Article VII at such time as the CLUB admits a new Full Regular Member or Provisional Regular Member in accordance with these Bylaws. The CLUB shall not be obligated to pay a Redemption Amount to any former Member who has resigned, died or been expelled until a successor Full Regular Member or Provisional Regular Member has been admitted to Membership.

(2015 Bylaws Art. 7 § 4). The 2015 Bylaws do not specifically speak to the equity redemption consequences of membership "conversion"—that is, from a Double Eagle or Non-Resident Member to a Full or Provisional Regular member. Where conversions have occurred, the Club has not paid redemptions. (Doc. No. 47 at 10).

"The first step is for the Court to determine whether the terms of the Bylaws are clear and unambiguous." (Doc. No. 49 at 19). Under North Carolina law, this Court may only enter summary judgment if it deems the relevant contract language "unambiguous." Mountain Fed.

5

Land Bank, 390 S.E.2d 679. Contract language is ambiguous if it "is fairly and reasonably susceptible to either of the constructions for which the parties contend." Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 172 S.E.2d 518, 522 (N.C. 1970). Here, the relevant language is only reasonably susceptible to the construction proposed by Plaintiffs.

The 2015 Bylaws state that redemption is owed when "the CLUB admits a new Full Regular Member or Provisional Regular Member." This is known as the "triggering provision." Plaintiffs read the triggering provision to state that equity is redeemed when the Club permits entry to ("admits") someone who was not previously a ("new") Full or Provisional Regular Member as such. Plaintiffs argue "the Bylaws unambiguously establish" that conversion results in the admission of a new Full Regular Member, "thereby triggering the requirement [that] an equity redemption . . . be paid to the next former member on the priority list." (Doc. No. 47 at 11–12). On Plaintiffs' read of the 2015 Bylaws, the word "new" modifies "Full Regular Member" such that anyone who converts their membership to Full Regular status becomes a "new Full Regular Member." (Id. at 12). Upon conversion, the former Double Eagle is thus "admitted" as a new Full Regular Member. (Id.).

Plaintiffs' argument relies on giving plain meaning to the words "new" and "admits" as used in the 2015 Bylaws. North Carolina courts apply the plain meaning canon to contract construction where the relevant terms are not defined in the document itself. Marcoin, Inc. v. McDaniel, 320 S.E.2d 892, 897 (N.C. Ct. App. 1984); Barker v. Barker, 745 S.E.2d 910, 364 (N.C. Ct. App. 2013). Because neither "new" nor "admits" are defined in the 2015 Bylaws,[1] Plaintiffs' plain meaning construction is appropriate. Plaintiff's reading of the provision—that it

---

[1] Defendant argues that Art. IV of the 2015 Bylaws defines the term "admits." (Doc. No. 56 at 7); (Doc. No. 52 at 8). But that Article is entitled "Invitation Requirements" and uses the word "admission" only once in passing. (Doc. No. 49-1).

applies when the Club admits a new Full or Provisional Regular Member <u>as such</u>—is fair and reasonable.

Defendant argues that a Double Eagle Member's conversion to a Full Regular Member does not constitute "admission" and therefore falls outside the scope of the triggering provision. True, such a member has already been "admitted" to the Club as a Double Eagle. But they have not been admitted as a Full or Provisional Regular Member. The triggering provision's use of "admits" specifies "a new Full Regular Member or Provisional Regular Member" as its object. The applicability of the provision turns not on the admitted Member's novelty to the club <u>as a whole</u>, but instead on the admitted Member's novel status as a <u>Full or Provisional Regular Member</u>. <u>Contra</u> (Doc. No. 49 at 20) ("Redemption Payments are only triggered when a <u>new</u> (meaning no prior affiliation to the Club) member is <u>admitted</u>.").

Defendant's construction of the triggering provision is neither fair nor reasonable. The Club argues that the triggering provision does not apply upon conversion because an existing (<u>i.e.</u>, already-admitted) member cannot be "admitted" as a new member. (Doc. No. 49 at 11). Defendant repeatedly mischaracterizes the triggering provision as applying when a (as in <u>any</u>) member joins the club, so long as they are "newly admitted." (Doc. No. 53 at 11 n.22) (citing Doc. No. 49 at 1, 9, 11); (Doc. No. 44 at 2). But that is not what the Bylaws say. The triggering provision of the 2015 Bylaws dictates that the Club owes an equity redemption when it "admits a new Full Regular Member or Provisional Regular Member"—not <u>any</u> member so long as they are <u>new</u>, but any <u>new Full or Provisional Regular Member</u>. Defendant is correct: it would be nonsensical to suggest that an existing member can be admitted as a new member. But that is not what the triggering provision suggests. Instead, the triggering provision suggests that an existing member can be admitted as a new member of a different class.

7

Defendant's construction of the triggering provision would render the words "Full Regular Member or Provisional Regular Member" "mere surplusage." Marbury v. Madison, 5 U.S. 137, 174 (1803). In contract construction, as in statutory interpretation, "it is axiomatic . . . that each word is to be given meaning and effect." See Polanco v. HSBC Bank USA Nat'l Ass'n, No. 3:17-CV-00466-GCM, 2019 WL 2590964, at *4 (W.D.N.C. June 21, 2019) ("verba cum effectu sunt accipienda"). Defendant's proposed reading of the 2015 Bylaws' triggering provision falls afoul of this "surplusage canon." Consequently, Defendant's proposed reading of the triggering provision is unreasonable.

Defendant's argument that "only a Member newly admitted to the Club (meaning no prior affiliation) triggers a Redemption payment" (Doc. No. 44 at 2) relies heavily on the purported intent of the parties when the original Bylaws were drafted and initially enforced. (Id. at 2–3); (Doc. No. 49 at 3–4, 19–20). This argument suffers from two independently fatal flaws. First, and fundamentally, many of the Plaintiffs were not parties to the original Bylaws. (Doc. No. 1 ¶¶ 2–4, 6–8, 10, 12–14); (Doc. No. 49 ¶ 17). The original Bylaws and their enforcement are not probative of those Plaintiffs' intent. Second, this Court has found the triggering provision of the 2015 Bylaws unambiguous. Defendant's recourse to materials beyond the four corners of the contract (e.g., the original bylaws) is inappropriate where the Bylaws themselves are unambiguous. Even if Defendant is correct that "the initial drafters of the bylaws never intended the Club to draw from Club funds to issue a Redemption" (Id. at 3), the initial drafters' intent is irrelevant to the meaning of the 2015 Bylaw language at issue here.

Defendants cite King v. Davis for the proposition that this Court should interpret the 2015 Bylaws in light of the parties' intent. 130 S.E. 707, 709 (N.C. 1925) ("If the words employed are capable of more than one meaning, the meaning to be given is that which it is

8

apparent the parties intended them to have."). But that century-old case acknowledged that recourse to intent is inappropriate where, as here, "a contract is expressed in plain and unambiguous language." Id. (quoting Ollis v. Drexel Furniture Co., 92 S.E. 371 (N.C. 1917)). The applicable language of the 2015 Bylaws—"at such time as the CLUB admits a new Full Regular Member or Provisional Regular Member"—is not ambiguous on its face. Nor can this Court look to the parties' intent, as embodied in the original bylaws, as evidence of potential ambiguity: the ambiguity determination is limited to the four corners of the contract, here the 2015 Bylaws. See, Woods v. Nationwide Mut. Ins. Co., 246 S.E.2d 773, 777 (N.C. 1978); Fairview Developers, Inc. v. Miller, 652 S.E.2d 365, 367 (N.C. Ct. App. 2007); Piedmont Bank & Trust Co. v. Stevenson, 339 S.E.2d 49, 52 (N.C. App. 1986).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (cleaned up). The Court finds that the 2015 Bylaws' triggering provision is unambiguous, and that Plaintiffs' reading of the clause is the only plausible construction. It follows that Defendant's proposed construction is unreasonable. Consequently, Plaintiffs are entitled to judgment on liability as a matter of law. Plaintiffs' summary judgment motion will be granted, and Defendant's summary judgment motion will be denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiffs' Motion for Summary Judgment as to Liability Only (Doc. No. 47) is **GRANTED**. Plaintiffs' Motion, and this Court's Order, pertains exclusively to Plaintiffs' construction of the triggering provision. Plaintiffs did not move for summary judgment as to the alleged breach of the Bylaws arising out of Defendant's suspension

of redemption payments. (Doc. No. 52 at 1 n.1). **THE COURT FINDS** that Plaintiffs are entitled to judgment as a matter of law as to liability on their breach of contract claims, with the amount of damages to be determined at trial.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 48) is **DENIED**. Because the parties did not present argument on Defendant's summary judgment motion as it pertains to the Club's suspension of equity redemptions between December 2019 and July 2020, the Court **DECLINES** to rule on that aspect of Defendant's motion at this time.

*[Signature]*
Max O. Cogburn Jr.
United States District Judge

Signed: January 16, 2024